UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
Olvin Castro Guzman,                          :
                                              :
                 Plaintiff,                   :
                                              :
        -against-                             :
                                              :
Commissioner of Social Security,              :
                                              :
                 Defendant.                   :
------------------------------------------------------------X

```
┌─────────────────────────────────┐
│ USDC SDNY                        │
│ DOCUMENT                         │
│ ELECTRONICALLY FILED             │
│ DOC #:_____           │
│ DATE FILED: _7/29/2022_          │
└─────────────────────────────────┘
```

**OPINION**
21-CV-6538 (KHP)

**KATHARINE H. PARKER, United States Magistrate Judge**.

        Plaintiff Olvin Castro Guzman, represented by counsel, commenced this action against

Defendant, Commissioner of the Social Security Administration, pursuant to the Social Security

Act (the "Act"), 42 U.S.C. § 405(g).  Plaintiff seeks review of Defendant's decision that he was

not disabled as of January 7, 2019, the onset date of his alleged disability, through the date of

the decision, September 2, 2020, and accordingly was not eligible for Disability Insurance

Benefits ("DIB") and Supplemental Security Income ("SSI").  Plaintiff and Defendant both moved

for judgment on the pleadings.  (ECF No. 19.)

        For the reasons set forth below, the Court DENIES Plaintiff's motion and GRANTS

Defendant's motion for judgment on the pleadings.

## BACKGROUND

        Plaintiff, born in 1979, has a high school education and technical training in plumbing,

HVAC, and electrics.  (A.R. 43, 66, 408-09.)  Plaintiff served in the United States Navy from 2010

until 2014, and he has also worked as a railroad worker, carpenter, maintenance worker, and

teacher.  (A.R. 409.)  He has three children – two from a previous marriage and one with his

current girlfriend.[1]  (A.R. 77.)  He owns a home where he lives by himself.  (A.R. 59.)

### 1.    Onset of the alleged disability and relevant medical evidence

In January 2019, Plaintiff was working as a maintenance worker for a high-speed

railroad.  (A.R. 36.)  His work involved cleaning, stocking materials, and lifting items such as

trash bags weighing up to sixty pounds.  (A.R. 36-37.)  On or about January 15, 2019, Plaintiff

heard a pop in his right shoulder, and he began experiencing shoulder pain the next day.  (A.R.

37.)  Plaintiff believes the pain was caused by heavy lifting at work.  (A.R. 33.)  On January 18,

2019, the pain had worsened, and Plaintiff visited the emergency room.  (A.R. 37.)  A medical

examination of Plaintiff at the emergency room revealed joint swelling and tenderness in his

right elbow, but an x-ray of the elbow revealed no abnormalities.  (A.R. 470-74.)  Plaintiff did

not return to work after that day.  (A.R. 38.)

In February 2019, Plaintiff visited Dr. Maryann Paul due to left shoulder pain.  (A.R. 482.)

He indicated that he had been previously diagnosed with bursitis.  (*Id*.)  Dr. Paul prescribed

Naproxen.  (A.R. 484.)  On March 12, 2019, Dr. Brijesh Reddy conducted Magnetic Resonance

Imaging ("MRI") of Plaintiff's cervical and lumbar spine.  (A.R. 546, 548).  The MRIs revealed

that Plaintiff suffered from multiple disc herniations with nerve root compression and slight

loss of cervical lordosis.[2]  (*Id*.)

---

[1]  Plaintiff clarified that only two of his three children are biologically his, but that he considers all three to be his
own.  (A.R. 77.)

[2]  Specifically, the cervical MRI revealed dual level C5-C6, C6-7 posterior central subligamentous herniation with
central regional nerve root impingement with concomitant diffuse posterior disc bulge narrowing both lateral
recesses, as well as slight loss of the cervical lordosis.  (A.R. 546.)  The lumbar MRI revealed evidence of
multilevel posterior disc bulges between L3 and S1 and superimposed trilevel posterior herniations at L3-L4, L4-

In April 2019, Dr. Joquetta Paige examined Plaintiff.  (A.R. 533-35.)  Plaintiff reported pain in his right elbow and neck.  (*Id*.)  Dr. Paige found that Plaintiff had normal senses, gait, and reflexes.  (A.R. 534.)  An x-ray of Plaintiff's right shoulder showed that the bones were normally mineralized and the joint spaces were preserved, and it revealed no fracture, dislocation, periosteal reaction, or osseous destruction.  (A.R. 601.)

On May 2, 2019, an MRI of Plaintiff's right shoulder by Dr. David Payne demonstrated that Plaintiff suffered from tendinosis, bursitis, and labral tearing in his shoulder,[3] but that Plaintiff's glenohumeral joint was intact, his acromioclavicular joint was preserved, and the supraspinatus outlet was patent.  (A.R. 549-50).  An MRI of Plaintiff's knee revealed a tear of the posterior horn of his medial meniscus, scarring of his anterior cruciate ligament (commonly known as the ACL), a medial retinacular sprain, joint effusion, and tendinosis of the quadriceps and patellar tendons compatible with chronic Osgood-Schlatter disease.  (A.R. 551-52.)  The MRI revealed no significant anterior compartment cartilage loss.

On May 9, 2019, Dr. Candace Tannis and attending physician, Dr. John Meyer, examined Plaintiff at Mount Sinai Hospital.  (A.R. 553-61.)  Plaintiff reported right shoulder pain and numbness and tingling along the medial aspect of his right hand.  (A.R. 555.)  Upon examination, Plaintiff demonstrated reduced range of motion of his right shoulder due to pain, shoulder tenderness, and decreased grip strength in his right hand.  (A.R. 559.)  Plaintiff was diagnosed with right shoulder injury, subsequent encounter, cervical radicular pain, and neck

---

L5 and L5-S1, with regional levels of nerve root compromise and straightening of the lumbar lordosis.  (A.R. 548.)

[3]  Specifically, the MRI revealed tendinosis of anterior fibers of the supraspinatus, reactive subacromial subdeltoid bursitis, and an anterior inferior labral tear, compatible with a Bankart tear.  (A.R. 549-50).

pain.  (A.R. 560.)  The medical report noted that Plaintiff was attending school for HVAC training

at the time, but that he could not perform the hands-on portion of the course due to his

shoulder pain.  (A.R. 555.)  At a follow-up evaluation with Dr. Meyer on June 7, 2019, Plaintiff

exhibited the same symptoms and received the same diagnoses.  (A.R. 579.)

On June 26, 2016, consultative examiner Dr. Michael Healy examined Plaintiff.

(A.R. 611-15.)  Plaintiff reported pain in his right shoulder, left knee, neck, and lower back.

(A.R. 611.)  Plaintiff indicated that he cared for and cooked for himself, but that he had

difficulty cleaning, doing laundry, and shopping.  (A.R. 612.)  Dr. Healy noted that Plaintiff

appeared to be in slight discomfort, that he displayed a slightly widened gait and stance, and

that he could only squat 30% of a full squat, but that he had a normal stride, was able to walk

on his heels and toes, used no assistive devices, needed no help rising from his chair or getting

on and off the exam table, and needed no help changing for the exam.  (A.R. 612-13.)  The

examination also showed that Plaintiff had decreased range of motion in his back, right

shoulder, and left knee.[4]  (A.R. 613.)  Plaintiff had 4/5 strength in his left lower extremity and

tenderness on palpation of his left knee, and 5/5 strength in his other extremities.  (A.R. 614.)

Plaintiff's deep tendon reflexes were physiologic and equal in the upper and lower extremities,

and he had no sensory deficits.  (A.R. 614.)  He had intact hand and finger dexterity and his grip

strength was 5/5 bilaterally.  (*Id*.)

---

[4]  Specifically, examination of the cervical spine showed decreased flexion and extension 30 degrees anterior and
posterior, lateral flexion 10 degrees both right and left, and rotary motion 30 degrees both right and left;
examination of the lumbar spine demonstrated decreased flexion and extension 45 degrees, lateral and flexion
10 degrees right and left, and rotatory motion 15 degrees right and left; examination of the right shoulder
demonstrated decreased range of motion with a forward elevation and adduction of 100 degrees, with full
adduction and full internal and external rotation; and examination of the left knee revealed decreased range of
motion, with flexion/extension approximately 30 degrees, associated with discomfort, and his straight leg raise
was negative bilaterally.  (A.R. 613.)

Dr. Healy diagnosed Plaintiff with right shoulder pain with known rotator cuff tear, injury to supraspinatus tendon, chronic left knee pain with known medial meniscal tear, neck pain with known cervical spine intervertebral disc disruption, and lower back pain. (*Id*.) Dr. Healy opined that Plaintiff had moderate limitations in reaching, grasping, holding objects with the right upper extremity, standing, walking, bending, lifting, and climbing stairs. (*Id*.)

On June 26, 2019, state agency consultant Dr. S. Putcha reviewed Plaintiff's records. (A.R. 96-97.) Dr. Putcha found that Plaintiff could occasionally lift and carry 20 pounds, frequently lift and carry 10 pounds, sit for about six hours in an eight-hour workday, and stand and/or walk for about six hours in an eight-hour workday. (A.R. 96.) Dr. Putcha found that Plaintiff was unlimited in his ability to push and pull other than the limitations for lifting and carrying. (A.R. 97.) Dr. Putcha found that Plaintiff had no other limitations. (*Id*.) Dr. Putcha stated that Dr. Healy's opinion overestimated the severity of Plaintiff's limitations and relied too heavily on Plaintiff's subjective reports of symptoms and limitations. (A.R. 98.) Dr. Putcha concluded that the objective medical evidence did not support Dr. Healy's opinion, and that the record supported a finding that Plaintiff could perform light work. (A.R. 99.)

In September 2019, state agency consultant Dr. S. Stradley reviewed Plaintiff's medical record. (A.R. 124-29.) Dr. Stradley agreed with Dr. Putcha's opinion regarding Plaintiff's abilities to lift, carry, push, pull, and sit, but found that Plaintiff could only stand and/or walk for about three hours in an eight-hour workday, and that Plaintiff was limited in reaching overhead with the right upper extremity. (A.R. 125.) Dr. Stradley concluded that Plaintiff had the maximum sustained work capability for sedentary work. (A.R. 129.)

On June 26, 2019, consultative examiner Seth Sebold, Ph.D., performed a psychiatric evaluation on Plaintiff.  (A.R. 605-09.)  Dr. Sebold diagnosed Plaintiff with adjustment disorder, with mixed anxiety and depressed mood.  (A.R. 608.)  Dr. Sebold opined that Plaintiff had only mild limitations in regulating emotions, controlling behavior, and maintaining well-being, and that these psychiatric problems did not appear to be significant enough to interfere with his ability to function on a daily basis.  (*Id*.)  In July 2019, state agency consultant E. Kamin, Ph.D., performed a psychiatric review of Plaintiff's records and found Plaintiff's mental impairments to be non-severe.  (A.R. 93-94.)  In September 2019, L. Blackwell, Ph.D., performed a psychiatric review of Plaintiff's file on reconsideration, and he concurred with Dr. Kamin that Plaintiff's mental impairments were non-severe.  (A.R. 123.)

### 2.  Application for Benefits and Hearing before ALJ

In March 2019, Plaintiff applied for DIB and SSI due to his alleged disability.  (A.R. 373, 375.)  Defendant denied Plaintiff's applications on July 9, 2019.  (A.R. 148-55.)  Plaintiff filed a request for reconsideration on July 31, 2019, and this was denied on September 18, 2019.  (A.R. 162, 176.)  Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), which was held before ALJ John Carlton on July 13, 2020, by teleconference.  (A.R. 13, 188.)

At the hearing, Plaintiff testified that he experienced "constant pain."  (A.R. 50.) Plaintiff testified that he cannot lift more than eight to ten pounds without feeling pain, that he cannot walk more than one block without needing to stop and rest, and that every time he attempts to perform physical work, he needs to take medication for pain.  (A.R. 50-52.)  Plaintiff also testified that he experiences dizziness and light-headedness from his pain medication. (A.R. 51.)  He further testified that he could sit for two or three hours and stand for two hours

in an eight-hour workday.  (A.R. 69, 74-75.)  Plaintiff also alleged in his Function Report that he

had difficulty dressing, bathing, and toileting, and that he could not kneel, squat, reach, or use

his hands.  (A.R. 418.)  Additionally, Plaintiff testified that from approximately December 2019

until March 2020, he attended a program through Berk Trade School to become an electrician,

which he stopped attending because of the COVID-19 pandemic.  (A.R. 43-44.)

### 3.  ALJ's Decision

On September 2, 2020, ALJ Carlton issued a decision finding Plaintiff was not disabled

under sections 216(i), 223(d), and 1614(a)(3)(A) of the Act, and accordingly was not entitled to

DIB or SSI.  (A.R. 13-22.)  ALJ Carlton found that Plaintiff met the insured status requirements of

the Act through December 31, 2023, and that he did not engage in substantial gainful activity

since the alleged onset of his disability.  (A.R. 15.)  ALJ Carlton reviewed the entire record and

found that Plaintiff had medically determinable impairments that were severe; in particular,

Plaintiff had degenerative disc disease of the lumbar and cervical spines, with radiculopathy,

left knee meniscal tear, left elbow bursitis, and tendinosis of the right shoulder with labral tear.

(*Id*.)  ALJ Carlton also found that Plaintiff had the non-severe impairments of anxiety,

depression, and panic attacks.  (A.R. 16.)  He determined Plaintiff did not have an impairment

or combination of impairments that met the severity of a listed impairment.  (A.R. 17.)

After consideration of the entire record, including Plaintiff's allegations regarding his

symptoms and the various medical opinions regarding Plaintiff, ALJ Carlton determined that

Plaintiff had the residual functional capacity ("RFC")[5] to perform sedentary work as defined in

---

[5] The RFC is an "individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (citation omitted).

20 CFR 404.1567(a) and 416.967(a),[6] with the further limitations of "occasionally climbing ramps and stairs, never climbing ladders, ropes, or scaffolds, occasionally balancing, stooping, crouching, crawling, and kneeling, no overhead reaching bilaterally, and no exposure to unprotected heights or dangerous machinery." (Id.) In making this determination, the ALJ indicated whether and why he found the various testimony and medical opinions persuasive and/or supported by other evidence. (A.R. 17-20.)

Finally, relying on testimony provided by a vocational expert at the hearing, ALJ Carlton determined that Plaintiff was unable to perform any past relevant work, but that there existed jobs in significant numbers in the national economy that Plaintiff could perform, including document preparer, food and beverage order clerk, and charge account clerk. (A.R. 21-22.) Thus, the ALJ found Plaintiff had not been under a disability as defined in the Act from January 7, 2019 through the date of the decision. (A.R. 22.)

On June 2, 2021, the Appeals Council denied a request for review, making the ALJ's decision the final Agency decision. (A.R. 1.)

### 4. The instant action

Plaintiff commenced this action on August 2, 2021, asserting that ALJ Carlton's determination regarding Plaintiff's RFC is not supported by substantial evidence and constituted legal error because ALJ Carlton (1) did not include all of the limitations as assessed

---

[6] Sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. . . . Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567, 416.967. "'Occasionally' means occurring from very little up to one-third of the time, and would generally total no more than about 2 hours of an 8-hour workday. Sitting would generally total about 6 hours of an 8-hour workday." Soc. Sec. Ruling SSR 96-9p., Titles II and XVI: Determining Capability To Do Other Work—Implications of a Residual Functional Capacity for Less Than a Full Range of Sedentary Work, 61 FR 34478-01 (hereinafter "SSR 96-9p.")

by Drs. Healy and Stradley in his determination of the RFC; and (2) improperly disregarded Plaintiff's testimony as to the intensity, persistence, and limiting effect of his symptoms.  (Joint Stipulation at 10, 17.)

## LEGAL STANDARDS

A court reviewing a final decision by the Commissioner is limited to determining whether the Commissioner's conclusions (1) "were supported by substantial evidence in the record," and (2) "were based on a correct legal standard."  *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (per curiam) (citing *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008)).

Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  To be supported by substantial evidence, the ALJ's decision must be based on consideration of "all evidence available in [the claimant]'s case record."  42 U.S.C. §§ 423(d)(5)(B).  The ALJ's decision must set forth "a discussion of the evidence" and the "reasons upon which [the decision] is based."  42 U.S.C. § 405(b)(1).  It must do so "with sufficient specificity to enable the reviewing court to decide whether the determination is supported by substantial evidence."  *Herrera v. Comm'r of Soc. Sec.*, 2021 WL 4909955, at *5 (S.D.N.Y. Oct. 21, 2021) (citing *Calzada v. Astrue*, 753 F. Supp. 2d 250, 269 (S.D.N.Y. 2010)).

That said, the ALJ need not "mention[ ] every item of testimony presented," *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) (per curiam), or "reconcile explicitly every conflicting shred of medical testimony," *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010).  If the ALJ fails to consider evidence in the record, the Court must be "able to look to other

portions of the ALJ's decision and to clearly credible evidence in finding that his determination

was supported by substantial evidence." *Mongeur*, 722 F.2d at 1040 (citation omitted).  If the

Commissioner's findings are supported by substantial evidence, those findings are conclusive.

42 U.S.C. § 405(g); *see also Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (per curiam).

As to the correct legal standard, the Commissioner is required to conduct a sequential

five-step inquiry whereby the Commissioner determines: (1) whether the claimant is currently

engaged in any substantial gainful activity; (2) if not, whether the claimant has a "severe

impairment" that significantly limits their ability to do basic work activities; (3) if so, whether

the impairment is one listed in Appendix 1 of the regulations, and what the claimant's RFC is;

(4) if the impairment does not qualify as a listed impairment, whether the claimant possesses

the RFC to perform their past work; (5) if the claimant is not capable of performing past work,

whether they are capable of performing other work that exists in the national economy.

*Vellone v. Saul*, 2021 WL 319354, at *5 (S.D.N.Y. Jan. 29, 2021), *report and recommendation*

*adopted sub nom. Vellone on behalf of Vellone v. Saul*, 2021 WL 2801138 (S.D.N.Y. July 6,

2021).[7]  The claimant bears the burden of proof at the first four steps of the analysis, and at the

last step, the Commissioner has the burden of showing there is other work the claimant could

perform.  *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998).

Regarding claims filed on or after March 27, 2017, in evaluating the medical evidence,

the Commissioner need not assign particular evidentiary weight to treating physicians as was

previously required by the Act.  *Vellone*, 2021 WL 319354, at *6.  Rather, when considering

---

[7]  The Court in *Vellone* discusses at length the standards for entitlement to disability benefits, examination of the procedures employed and development of the record, and evaluation of the evidence, as amended by the new regulations in 2017.  2021 WL 319354, at *4-7.  Such discussions are incorporated here by reference.

medical opinions, the Commissioner must consider: (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) other factors.  *Id.*; *see also* 20 C.F.R. §§ 404.1520c(c), 416.920c(c).  The Commissioner is tasked with analyzing medical opinions at the source-level, meaning the Commissioner need not discuss each medical opinion in the record, and may apply the five factors holistically to a single medical source.  *Id.* §§ 404.1520c(b)(1), 416.920c(b)(1).

## DISCUSSION

As a threshold matter, the "court must first be satisfied that the ALJ provided plaintiff with a full hearing under the Secretary's regulations and also fully and completely developed the administrative record."  *Intonato v. Colvin*, 2014 WL 3893288, at *8 (S.D.N.Y. Aug. 7, 2014) (citation omitted).  After a careful review of the record, I find that ALJ Carlton provided Plaintiff with a full telephonic hearing and he thoroughly and completely developed the record.  The ALJ's ten-page decision also accurately applied the necessary sequential five-step inquiry and considered and weighed the relevant evidence.  (A.R. 13-23.)  In discussing and weighing the evidence, ALJ Carlton explained whether and why he found various evidence to be well supported and/or consistent with other evidence.  (A.R. 15-23.)  As such, ALJ Carlton applied the correct legal standard.

Plaintiff nonetheless challenges the RFC determination made by ALJ Carlton by arguing that the ALJ did not appropriately consider all of the medical evidence or Plaintiff's testimony. Plaintiff's arguments are unavailing.

**1. The RFC is Supported by the Relevant Medical Evidence.**

Plaintiff alleges that in reaching the RFC determination that Plaintiff can perform sedentary work with some additional limitations, ALJ Carlton failed to account for all of the limitations that Drs. Stradley and Healy identified.  Specifically, Plaintiff alleges the ALJ failed to account for Dr. Stradley's determination that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently, stand or walk for 3 hours and sit for 6 hours, and occasionally reach overhead; as well as Dr. Healy's determination that Plaintiff had moderate limitations in standing, walking, bending, lifting, and climbing stairs, and in reaching, grasping, and holding objects with the right upper extremity.  (A.R. 125, 614.)  Plaintiff alleges that these limitations were not factored into the RFC determination, and that ALJ Carlton failed to provide a rationale for not including all the assessed limitations in the RFC.

This argument fails because the RFC determination accounts for these limitations. Regarding Dr. Stradley's finding that Plaintiff could occasionally lift 20 pounds and frequently lift 10 pounds, this is consistent with the regulatory definition of sedentary work as work that "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools."  20 C.F.R. §§ 404.1567, 416.967.  Similarly, Dr. Stradley's findings that Plaintiff could stand or walk for 3 hours, sit for 6 hours, and occasionally reach overhead are consistent with the regulatory definition of sedentary work as work that involves sitting for a total of approximately 6 hours per workday, and walking and standing for approximately 2 hours per workday.  SSR 96-9p; *see also Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004).  Even though Dr. Stradley found that Plaintiff could occasionally reach overhead, ALJ Carlton added an additional limitation to the RFC that limits Plaintiff's capacity to "no

overhead reaching bilaterally."  (A.R. 17.)  As such, the RFC fully accounts for the limitations identified by Dr. Stradley.

Similarly, ALJ Carlton's RFC determination is consistent with Dr. Healy's assessment.  Dr. Healy's opinion that Plaintiff had only moderate limitations in reaching, standing, walking, bending, lifting and climbing stairs is consistent with an RFC that Plaintiff can perform sedentary work, with the further limitations of only "occasionally climbing ramps and stairs, never climbing ladders, ropes, or scaffolds, occasionally balancing, stooping, crouching, crawling, and kneeling, no overhead reaching bilaterally, and no exposure to unprotected heights or dangerous machinery."  (A.R. 17.)  Indeed, courts have concluded that such moderate limitations are generally consistent with the even less restrictive RFC of light work. *See, e.g.*, *Lopez v. Berryhill*, 448 F. Supp. 3d 328, 345 (S.D.N.Y. 2020) (finding RFC to perform light work with some additional limitations was "entirely in line with" doctors' opinion that the claimant had mild to moderate limitations in prolonged walking and climbing stairs, and moderate to severe limitations in lifting and carrying); *Jordan v. Comm'r of Soc. Sec.*, 2018 WL 1388527, at *10 (S.D.N.Y. Mar. 19, 2018) (collecting cases).

The only limitations not explicitly accounted for by the RFC are Plaintiff's moderate limitations in grasping and holding objects.  However, ALJ Carlton explained that he found that the weight of the medical evidence revealed "no deficits in fine or gross manual dexterity, or bilateral grip strength."  (A.R. 17.)  ALJ Carlton cited Dr. Healy's medical report, which found that Plaintiff had "normal 5/5 strength" in both arms, "hand and finger dexterity intact," and "grip strength 5/5 bilaterally."  (A.R. 614.)  ALJ Carlton also noted that, since the date of the onset of symptoms, Plaintiff had attended school to become an electrician, and that such a job

would necessarily involve grasping and holding objects.  (A.R. 19.)  Moreover, Plaintiff himself

testified that he could lift up to ten pounds and that he did not have issues lifting pencils.  (A.R.

51.)  Therefore, the ALJ's determination that Plaintiff did not need limitations for grasping and

holding objects is supported by Dr. Healy's findings and Plaintiff's own testimony.  While ALJ

Carlton was under no obligation to explicitly reconcile these conflicting pieces of evidence,

*Zabala*, 595 F.3d at 410, it is clear that he appropriately considered the various pieces of

evidence regarding Plaintiff's limitations as to grasping and holding objects, and his decision not

to include this limitation in the RFC is well supported.

Because the ALJ's determination that the Plaintiff did not need additional limitations for

grasping and holding objects is supported by substantial evidence, the Court cannot second-

guess this determination.

**2. The ALJ Properly Evaluated Plaintiff's Testimony Regarding his Symptoms.**

Plaintiff argues that, in determining Plaintiff's RFC, ALJ Carlton failed to properly

account for Plaintiff's testimony regarding the severity of his symptoms and his limitations.

When determining the RFC, "the ALJ is required to take the claimant's reports of pain and other

limitations into account, but is not required to accept the claimant's subjective complaints

without question." *Genier*, 606 F.3d at 49.  Although ALJs previously were required to make a

determination on the claimant's credibility, such a determination is no longer required, and

ALJs are instead tasked with evaluating the claimant's symptoms based on the record as a

whole.  Soc. Sec. Ruling 16-3p Titles II & Xvi: Evaluation of Symptoms in Disability Claims, SSR

16-3P (S.S.A. Oct. 25, 2017).  ALJ Carlton complied with these standards and requirements in

assessing Plaintiff's subjective complaints.

Plaintiff testified that he could sit for 2-3 hours at a time and stand for 2 hours in a workday, that he has difficulty dressing, bathing and toileting, and that he cannot lift more than 20 pounds, climb stairs, kneel, squat, reach, or use his hands.  (A.R. 50-52, 61, 69, 74-75.)  ALJ Carlton's decision acknowledges this testimony, and notes that "the intensity, persistence and limiting effects of these symptoms are not entirely consistent" with the other evidence.  (A.R. 18-19.)  The decision then recounts the medical and other evidence that led ALJ Carlton to that determination.  For example, ALJ Carlton notes that "[o]n physical examination in June 2019, the claimant used no assistive devices, was able to rise from a chair without difficulty," and "had no muscle atrophy or deficits in sensation or reflexes."  (A.R. 19.)  ALJ Carlton also observed that Plaintiff testified that he attended training programs after the onset of the alleged disability that would have trained Plaintiff to perform work at least at the light level.  (*Id.*)  ALJ Carlton explained that the fact that Plaintiff attended the programs was evidence Plaintiff believed he would be capable of performing the work, which is "inconsistent with the degree of limitations [Plaintiff] has alleged."  (*Id.*)

Accordingly, ALJ Carlton appropriately considered Plaintiff's testimony together with the other relevant evidence in assessing the RFC.  ALJ Carlton considered whether the testimony was consistent with other medical evidence that he found reliable.  To the extent ALJ Carlton rejected Plaintiff's testimony as to the degree of his symptoms, he explained why he did so in light of other evidence, including other testimony from Plaintiff.  ALJ Carlton's decision is thus supported by substantial evidence, and the Court cannot second guess his determination.

## <u>CONCLUSION</u>

For the reasons stated above, Plaintiff's motion for judgment on the pleadings is DENIED

and Defendant's motion for judgment on the pleadings is GRANTED.

**SO ORDERED.**

Dated:  July 29, 2022
      New York, New York

*Katharine H. Parker*
      KATHARINE H. PARKER
      United States Magistrate Judge